## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  **WAYLAN D. MELTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIV-20-228-PRW** |
| | ) | |
| 1.  **BOFS MANAGEMENT, LLC,** | ) | |
| 2.  **BISON OILFIELD SERVICES, LLC,** | ) | |
| 3.  **CIRCLE 9 RESOURCES, LLC, and** | ) | |
| 4.  **DEREK BERRY, individually,** | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
| **Defendants.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Waylan D. Melton, and submits this Complaint against

Defendants, BOFS Management, LLC, Bison Oilfield Services, LLC, Circle 9 Resources,

LLC, and Derek Berry, on the following allegations:

## PARTIES

1.  Plaintiff, Waylan D. Melton, is an adult male residing in Canadian County,

Oklahoma.

2.  Defendants are:

　　a.  BOFS Management, LLC ("BOFS"), an entity doing business in and

around Oklahoma County, Oklahoma;

　　b.  Bison Oilfield Services, LLC ("Bison"), an entity doing business in and

around Oklahoma County, Oklahoma;

　　c.  Circle 9 Resources, LLC ("Circle 9"), an entity doing business in and

around Oklahoma County, Oklahoma (collectively "Defendant entities"); and

      d.    Derek Berry ("Berry"), an individual, who at all relevant times hereto was employed as a Yard Manager with Defendant entities (collectively "Defendants").

## JURISDICTION AND VENUE

3.    This cause of action arises out of Plaintiff's former employment with Defendant entities and is based on: (a) violations of 42 U.S.C. § 1981; (b) race discrimination, racial harassment, the creation of a race-based hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964; and (c) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").

4.    This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

5.    All of the actions complained of herein occurred in and around Oklahoma County, Oklahoma.  Defendants are located in and/or conduct business within the geographical area encompassed by the United States District Court for the Western District of Oklahoma.  Wherefore, venue is proper in this Court under 28 U.S.C. § 1391.

6.    To the extent required, Plaintiff has exhausted his administrative remedies as to the above-listed claims.  Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about July 10, 2019, and an Amended Charge of Discrimination on or about November 1, 2019.  Plaintiff received his Dismissal and Notice of Rights letter from the EEOC dated February 4, 2020 (received by

Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7. Plaintiff is Black and was born in 1973, making him over age 40 at all times relevant hereto.

8. Plaintiff began his employment with Defendant entities in or around 2017. He was initially hired as a Driver by former Yard Manager Joe Craig.

9. Throughout his tenure, Plaintiff was a satisfactory or better employee. He was praised for his job performance. And, he was not written up.

10. Despite his good work performance, Plaintiff was terminated by Yard Manager Derek Berry, who is White, on or about July 10, 2019 – immediately after Plaintiff complained that he felt he was being discriminated against.

11. Prior to his termination, in or around November 2018, Plaintiff was promoted from a Driver to a Pusher position. He was consistently complimented on his work performance as a Pusher.

12. Yet, in or around February 2019, then-Yard Manager Hayden Ware, who is White, demoted Plaintiff, stating "they want you back in the truck."

13. Ware told Plaintiff that his Pusher position was being eliminated. However, this was not true. Weeks later, another individual, Preston (Last Name Unknown), who is White and believed to be in his 20s, replaced Plaintiff (age 45) in the Pusher position.

3

14.     In addition to his wrongful demotion, Plaintiff was also subjected to racist slurs and symbols in the workplace.  By way of example, several employees were hired who openly displayed swastika and other racial tattoos.

15.     And, on or about April 29, 2019, Yard Manager Ware sent Plaintiff a text message, calling Plaintiff a "negro."

16.     Particularly, Plaintiff had attempted to call Ware after a rural resident (in an area in which Plaintiff was required to drive) stopped Plaintiff to tell him that he was not supposed to drive over a certain bridge.

17.     Ware did not answer Plaintiff's telephone call, but sent Plaintiff a text message saying, "Can you read this motherf***er?!!"  He then stated, "You think these crazy a** hillbilly's [sic] give a f*** about a negro??? LOL."

18.     Ware further stated, "I'm glad you didn't get shot" and told Plaintiff that he (Ware) listened via the radio to the resident's communication with Plaintiff and admitted that he (Ware) "ignored [Plaintiff's] call twice."

19.     Moreover, Plaintiff and other similarly-situated Black employees were denied bonuses and other benefits of employment that were afforded to White employees.

20.     More particularly, beginning in or around 2019, Plaintiff was informed that Defendants were going to start paying Drivers bonuses in the amount of $500.00 each quarter.  Despite this, Plaintiff and other Black Drivers were not paid quarterly bonuses, whereas, White Drivers received their bonuses.

21.     As such, Plaintiff asked Yard Manager Berry on or about July 9, 2019, why he did not receive a bonus.

22.     Berry said Drivers were not eligible for a bonus if they received a traffic ticket or were written up during the quarter.  However, Plaintiff explained that neither applied to him, to which Berry replied that he would "look into it."  However, Plaintiff was not given a reason for being denied his bonus.

23.     Instead, Berry fired Plaintiff the next day, on or about July 10, 2019.

24.     On the morning of July 10, 2019, Berry called Plaintiff into his office after a safety meeting.

25.     During the safety meeting, Berry had announced that employees would be receiving pay raises at the end of the next quarter.  Berry asked if anyone had any questions. Plaintiff asked what, if any, eligibility requirements existed in order to be qualified for the upcoming pay raise.  However, Berry failed to reply, except to tell Plaintiff that he would talk with him later, then directing him to his office.

26.     Once in his office, Berry accused Plaintiff of being "disruptive" in the meeting. However, Plaintiff had not raised his voice, spoken out of turn, or done anything disruptive. He simply asked a question after Berry invited the same.

27.     Plaintiff disagreed with Berry's accusations and complained that he was being treated with racial bias.  Plaintiff further complained that he felt his demotion and being denied a bonus was racially biased.

Case 5:20-cv-00228-PRW   Document 1   Filed 03/11/20   Page 6 of 10

28.    Berry then called Plaintiff a "motherf***ing n*****" and fired Plaintiff.

29.    Significantly, Berry is known for using such racist language.  Berry often referred to Black employees as "n******" and treated them less favorably than their similarly-situated co-workers, who were not Black.

30.    By way of example, in addition to denying Plaintiff and other Black employees wages and bonuses that were afforded to White employees, White employees were also assigned easier, more favorable work assignments, such as water pulling, whereas Black employees were consistently assigned more difficult jobs, such as oil/mud pulling.

31.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries described hereafter.

## COUNT I: 42 U.S.C. §1981

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

32.    This Count is asserted against all Defendants.

33.    The matters alleged above constitute violations of 42 U.S.C. § 1981 in the nature of race discrimination, racial harassment, the creation of a racially hostile work environment and retaliation.

34.    Plaintiff is entitled to relief for race discrimination because Plaintiff is Black, he was qualified for his job, he was demoted, and his job was not eliminated.  Moreover, Plaintiff was replaced by a person of another race.

6

35.     Plaintiff is also entitled to relief for race discrimination because Plaintiff is Black, he was qualified for his job, he was terminated from his employment, and his job was not eliminated.

36.     Plaintiff is further entitled to relief for race discrimination because Plaintiff is Black, he possessed skills, efforts and responsibilities equal to employees of another race, and Plaintiff did not receive comparable wages and bonuses as that paid by Defendant entities to employees who were not Black.

37.     Plaintiff is also entitled to relief for race-based harassment and the creation of a race-based hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms, conditions or privileges of his employment, and the harassment was race-based or stemmed from racial animus.

38.     Plaintiff is further entitled to relief for retaliation because he engaged in protected opposition to discrimination/harassment, he suffered an adverse action subsequent to the protected activity, and a causal link exists between the protected activity and the adverse action.

39.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

40.     Because the actions of Defendants were willful, wanton or, at the least, in

reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II: TITLE VII

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

41.     This Count is asserted against Defendant entities only.

42.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of race discrimination, racial harassment, the creation of a racially hostile work environment and retaliation.

43.     Plaintiff is entitled to relief under Title VII for race discrimination because Plaintiff is Black, he was qualified for his job; he was demoted; and his job was not eliminated.  Moreover, Plaintiff was replaced by a person of another race.

44.     Plaintiff is also entitled to relief under Title VII for race discrimination because Plaintiff is Black; he was qualified for his job; he was terminated from his employment; and his job was not eliminated.

45.     Plaintiff is further entitled to relief under Title VII for race discrimination because Plaintiff is Black; he possessed skills, efforts and responsibilities equal to employees of another race; and Plaintiff did not receive comparable wages and bonuses as that paid by Defendant entities to employees who were not Black.

46.     Plaintiff is also entitled to relief under Title VII for race-based harassment and the creation of a race-based hostile work environment, as looking at the totality of the

circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms, conditions or privileges of his employment, and the harassment was race-based or stemmed from racial animus.

47.    Plaintiff is further entitled to relief under Title VII for retaliation because he engaged in protected opposition to discrimination; he suffered an adverse action subsequent to the protected activity; and a causal link exists between the protected activity and the adverse action.

48.    As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

49.    Because the actions of Defendant entities were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT III: ADEA - Age Discrimination

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

50.    This Count is asserted against Defendant entities only.

51.    The matters alleged above constitute violations of the ADEA in the form of age discrimination.

52.    Plaintiff is entitled to relief under the ADEA for age discrimination because, at all times relevant to this action, Plaintiff was over the age of forty (40); he was qualified

for his job; he was demoted; and his job was not eliminated.  Moreover, Plaintiff was replaced by a significantly younger individual (in his 20s).

53.    Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, he was over the age of forty (40); he was qualified for his job; he was terminated from his employment with Defendant entities; and his job was not eliminated.

54.    As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.  Plaintiff is also entitled to liquidated damages based upon Defendant entities' willful misconduct.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff requests this Court enter judgment in favor of Plaintiff and against Defendants and award Plaintiff compensatory damages, lost earnings, liquidated damages, punitive damages, pre-and-post judgment interest, costs, attorneys' fees and all other relief as permitted by law and as deemed equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 11th DAY OF MARCH, 2020.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
SHANNON C. HAUPT, OBA #18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800      (telephone)
(405) 239-3801      (facsimile)
leonardjb@leonardlaw.net
haupts@leonardlaw.net
JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED